# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ ) | | |
| STEPHEN AGUIAR, ) | | |
| ) | | |
| **Plaintiff,** ) | | |
| ) | | |
| v. ) | | **Civil Action No. 14-0240 (ESH)** |
| ) | | |
| DRUG ENFORCEMENT ADMINISTRATION, ) | | |
| ) | | |
| **Defendant.** ) | | |
| _____ ) | | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Stephen Aguiar brings this action against the Drug Enforcement Administration ("DEA") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, challenging the DEA's response to several of his FOIA requests. Between June 2013 and July 2014, plaintiff submitted multiple FOIA requests to the DEA, all seeking information that had been collected by the DEA during a criminal investigation that led to plaintiff's indictment and conviction.[1] In response, the DEA has produced a number of records, but it has not produced two items which plaintiff asked for: (1) four administrative subpoenas; and (2) a CD with the GPS tracking data obtained from plaintiff's vehicles along with mapping software used by the DEA to create images from this data at plaintiff's criminal trial. Before the Court is defendant's motion for summary judgment. (Def.'s Mot. for Summary Judgment, Apr. 8, 2015 [ECF No. 30].) For the reasons stated herein, the motion will be granted.

---

[1] Plaintiff is presently serving a 360-month sentence for conspiracy to distribute and distribution of cocaine. *See United States v. Stephen Aguiar*, No. 2:09-cr-00090 (D. Vt. Dec. 16, 2011), *aff'd*, 737 F.3d 251 (2d Cir. 2013).

## BACKGROUND

### I.   PLAINTIFF'S FOIA REQUESTS

#### A.   Requests for Administrative Subpoenas

Plaintiff's first FOIA request, dated June 6, 2013, asked for all DEA reports "regarding any investigation and all surveillance performed or conducted from March 1, 2009 through July 30, 2009" and all "reports memorialized by the Drug Enforcement Administration Asset Forfeiture Department."  (Decl. of Katherine L. Myrick, Chief of the FOIA/Privacy Act Unit at the DEA, Apr. 7, 2015 (attached to Def.'s Mot. for Summary Judgment) ("Myrick Decl."), Ex. A.)  He subsequently "reformulated" this request[2] to specify that he was seeking "all DEA Form 6 Report[s] of Investigation" related to his criminal case and "all civil forfeiture notices issued by the DEA Asset Forfeiture Section" relating to the seizure of his automobile and $60,000 in cash.[3]  (Id. Ex. C.)  Then, in a letter dated August 1, 2013, he added a request for "any administrative subpoena form issued by any DEA Agent operating out of the Burlington, Vermont Regional Office between the dates of: December 19, 2008 and October 19, 2009."  (Id. Ex. E.)

---

[2] The DEA had directed plaintiff to reformulate his request on the ground that it did "not reasonably describe" the records sought.  (Myrick Decl. Ex. B (citing 28 C.F.R. § 16.3(b) (FOIA request "must describe the records in enough detail to enable department personnel to locate them with a reasonable amount of effort")).)

[3] More specifically, plaintiff's July 11, 2013 request asked for "all DEA Form 6 Reports of Investigation written by any agent operating out of the Burlington, Vermont Regional Office between the dates of May 15, 2009 and April 20, 2011" or "written by any agent operating out of the Boston, Massachusetts  Regional Office between the dates of January 23, 2009 and July 31 2009" that "pertain[] to Criminal Case No. 2:09-cr-0090 out of the District of Vermont" and "all civil forfeiture notices forms issued by the DEA Asset Forfeiture Section between the dates of July 30, 2009 and July 30, 2010 related to the unlawful seizure of my 2009 Subaru Impreza in South Burlington, Vermont and $60,000 in cash from my residence at 52 Spear Street #25 in Quincy, Massachusetts."  (Myrick Decl. Ex. C.)

In a letter dated September 10, 2013, the DEA notified plaintiff that in response to his

June and July requests (its response did not expressly mention plaintiff's August 1 supplemental

request), it had located "four (4) files pertaining to you," processed two (2) of those files, and

identified 338 pages of responsive records, 232[4] pages of which were being withheld in full

pursuant to various FOIA exemptions and 106 pages of which were being released (2 pages in

their entirety and 104 pages with redactions).  (*Id.* ¶ 10 & Ex. F.)  Initially, the DEA advised

plaintiff that it would search the remaining two files upon receipt of money to cover the search

costs, but it subsequently concluded that the files covered dates that were not within the

parameters of plaintiff's requests.  (*Id.* Exs. F, H.)

The documents released by the DEA in September 2013 included several administrative

subpoenas, with dates ranging from January 9, 2009 to March 1, 2011.  (*See Vaughn* Index at

151-59.)  Plaintiff, however, believed that other administrative subpoenas existed and should

have been produced, and he filed an appeal with the Office of Information Policy, challenging

the DEA's production as "incomplete."  (Myrick Decl. Ex. I.)  On January 27, 2014, the OIP

notified plaintiff that it was affirming the DEA's action, concluding (without further explanation)

that the DEA had "conducted an adequate reasonable search for [responsive] records."  (*Id.* Ex.

K.)

While plaintiff's appeal to OIP was still pending, he submitted another request to the

DEA for administrative subpoenas, this time asking for all subpoenas issued between December

19, 2008, and March 28, 2011, as part of the DEA's investigation of him.  (*Id.* Ex. X.)  The DEA

---

[4] The DEA later discovered that it had miscounted and that it was actually withholding only 230
pages out of a total of 336 pages.  (Myrick Decl. ¶ 10 n.2.)  In addition, during the course of this
litigation, the DEA has released redacted versions of 15 of the withheld pages and rereleased 16
these pages with fewer redactions.  (*Id.* Ex. GG.)

informed plaintiff that because it believed that he was attempting to avoid fees by dividing a single request into a series of requests, it would "aggregate" this request with his earlier requests and not initiate processing until plaintiff remitted the estimated fees.  (*Id*. Ex. Y.)  No further action was taken on this request.

Finally, on April 28, 2014, plaintiff submitted a FOIA request requesting four specific administrative subpoenas:

1.  One January 2009 DEA subpoena issued for my 617-549-2915 phone.
2.  One March 2009 DEA subpoena issued for my Experian credit report.
3.  One April 2009 DEA subpoena issued for my Equifax credit report.
4.  One April 2009 DEA subpoena issued for my Trans-Union credit report.

(*Id*. Ex. BB.)  The DEA acknowledged receipt of this request and stated that it would proceed with processing it, although it advised plaintiff that its response might be delayed due to its backlog.  (*Id*. Ex. CC.)  Plaintiff responded by sending the DEA letter "to clarify . . . the limited scope of [his] FOIA request."  (*Id*. Ex. DD.)  On July 28, 2014, plaintiff sent a letter inquiring as to the status of this request (*Id*. Ex. EE), but he never received a formal response from the DEA or copies of the records he had requested.

## B.      Request for CD with GPS Tracking Data and Associated Mapping Software

In August 2013, plaintiff submitted a request to the DEA for:

 [a] CD from DEA containing the DEA computer file of all tracking information collected via GPS devices attached to my vehicles with all images and proprietary software associated with that information from January 23, 2009 thru July 30, 2009, the very same file used by DEA to prepare exhibits for trial.

(*Id*. Ex. L.[5]).  Initially, the DEA told plaintiff that it had "received a copy of a CD that we believe may be responsive to the subject of your request," but that "to process the CD, DEA will require

---

[5] Plaintiff's request explained that he sought this information because:

the services of an outside audio/video contractor." (*Id*. Ex. O, at 2.)  The DEA informed plaintiff

that the estimated cost for this service, which plaintiff would have to pay in advance, would be

$608.25 ($8.25 for the reproduction and $600 for the post-production editing/review).  (*Id*. Ex.

O, at 2.)  After further correspondence and litigation about the fee, though, the DEA informed

plaintiff that it had "conducted a preliminary review of the CD in an effort to reduce the initial

estimated fees" and "learned that the CD contained formatted spreadsheets of the tracking data

related to the subject of [plaintiff's] request."[6]  (*Id*. Ex. Z, at 2.)  It produced all of this data to

---

It is imperative that I be afforded and opportunity to study and view the exact data and images DEA monitored while agents were tracking my vehicle(s) either prospectively or historically.  For example, in preparation for my 2011 trial, Agent Carter prepared several images from his computer screen as he was tracking my vehicle on several different dates using DEA proprietary software that employs a Google mapping service.  All my research hinges on my being able to view exactly what DEA Agents were seeing as DEA tracked vehicles registered to me both prospectively and historically and collected this information between January 23, 2009 and July 30, 2009.

(Myrick Decl. Ex. L.)

[6] The DEA collects and stores this type of data as follows:

The DEA attaches a DEA GPS transmitter to a person's vehicle which connects to satellites to determine the precise location of the vehicle. The DEA GPS transmitter is intended to be hidden, so there is no screen showing the vehicle moving on a map. Instead the transmitter sends the information back to a computer where a DEA agent can see a vehicle icon moving on a map on the computer screen.  Standard GPS units send and receive constant communication to update the maps in a car electronic device. The DEA GPS transmitter only sends data to the DEA computer when an agent "pings" the transmitter. The pings can be requested, or scheduled for every ten minutes, or turned off until needed, to save battery power. When a ping happens, the computer system records the time, date, longitude, latitude and a vehicle description. When queried the computer creates a table of the pings on a spreadsheet.

(Reply at 8.)

plaintiff in hard copy (351 pages) at no cost.[7]  (*Id.*)  The DEA simultaneously informed plaintiff that that "no records were located related to any images." (*Id.*)

　　After receiving these pages, plaintiff notified the DEA that in his opinion its production did not fully respond to his request.  (*Id.* Ex. D.  He then filed an appeal with the OIP, arguing that the DEA should have provided him with either (1) a CD with the GPS data and the "compatible software used by agents of the DEA to track [his] movements continuously throughout a period of 6 months" or (2) in the alternative (on CD or in hard copy), "an unredacted version of each and every GPS ping report displaying: date, time, its corresponding geographical coordinates, altitude, speed, etc., including its corresponding satellite image plot on google maps a the lowest available altitude between 50-100 feet on the version of google maps in place at the time the GPS tracking of my vehicle(s) was performed by agents in 2009." (*Id.* Ex. AA (emphasis added).)  On September 30, 2014, the OIP closed this appeal without a decision due to the pending litigation.  (*Id.* Ex. FF (citing 28 C.F.R. § 16.9(a)(3) (2013)).)

## II.    PROCEDURAL BACKGROUND

　　Plaintiff commenced this action on January 13, 2014 (Compl., Jan. 13, 2014, ECF No. 1) and filed an amended complaint on August 15, 2014.  (Am. Compl., Aug. 15, 2014 [ECF No. 13].)

---

[7] In response to the DEA's letter, plaintiff submitted a check for $8.25, but requested a waiver or reduction of the remaining amount.  (Ex. P, Q.)  DEA denied the fee waiver request and returned plaintiff's check.  (Ex. R, U.)  Plaintiff appealed the DEA's denial of his fee waiver request to the OIP.  (Ex. S & T.)  By letter dated March 10, 2014, the OIP upheld the DEA's determination that plaintiff was not entitled to a fee waiver, but remanded plaintiff's request to the DEA "for it to calculate a revised fee estimate that accounts for two hours of search time and up to one hundred pages of duplication, or the cost equivalent thereof, without cost to you." (Ex. W, at 2 (citing 28 C.F.R. § 16.11(d)(3) (2014)) (the current version of § 16.11, after amendments and renumbering in May 2015, appears at 28 C.F.R. § 16.10)).)  The DEA's subsequent production of the 351 pages containing all of the data on the CD mooted any fee dispute.

Before the Court is the DEA's motion for summary judgment (Def.'s Mot. for Summary Judgment, Apr. 8, 2015 [ECF No. 30]), which is supported by a memorandum of points and authorities [ECF No. 30-1] ("Def.'s Mem."), a statement of material facts [ECF No. 30-2], the Myrick declaration [ECF 30-3] with attached exhibits A-HH [ECF No. 30-4], a *Vaughn* index [ECF Nos. 30-5, 30-6, 30-7], a reply (*see* Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summary Judgment, May 18, 2015 [ECF No. 33] ("Def.'s Reply"), a supplemental memorandum (*see* Def.'s Notice of Compliance with Court Order, Sept. 9, 2015 [ECF No. 36] ("Def.'s Notice of Compliance") and a supplemental declaration from Katherine Myrick [ECF No. 36-1] ("Myrick Supp. Decl.").  Plaintiff has filed an opposition to defendant's motion (*see* Pl.'s Opp'n to Def.'s Mot. for Summary Judgment, May 8, 2015 [ECF No. 32] ("Pl.'s Opp'n") and a response to its supplemental memorandum and declaration.  (*See* Pl's Resp. to Def.'s Notice of Compliance, Sept. 17, 2015 [ECF No. 37].)

## ANALYSIS

In relevant part, the amended complaint alleges that the DEA has failed to comply with the FOIA by (1) failing to produce the four administrative subpoenas specifically requested by plaintiff in April 2014 (Am. Compl. ¶¶ 8-11, 25); and (2) failing to produce a copy of the CD with the GPS tracking data and associated mapping software or, in the alternative, to produce images created from this data that include "each and every ping report[8]  from plaintiff's file."[9]

---

[8] "Ping reports," as defined by plaintiff's complaint, are "individual reports from DEA's tracking program where the ping location is plotted on Google maps showing a satellite image as a back drop behind a bubble identifying ping location, report date, time, latitude, longitude, speed, hearing, altitude, and time . . . ."  (Am. Compl., ¶ 26 n.1.)

[9] Plaintiff's third claim, which alleged that the DEA failed to produce "all civil forfeiture notices issued by DEA's Asset Forfeiture Section related to the July 30, 2009 seizure of P's 2009 Subaru Impre[z]a and $60,000" (Am. Compl. ¶¶ [], 25), was mooted by the DEA's supplemental production of documents on March 10, 2015.  (Myrick Decl. Ex. HH.)

(Am. Compl. ¶¶ 19-23, 26.)  In seeking summary judgment, defendant asserts that despite its

failure to produce these records, it has fully complied with its obligations under the FOIA.

### I.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence show that "there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  On summary judgment "'the inferences to be drawn

from the underlying facts . . . must be viewed in the light most favorable to the party opposing

the motion.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Judicial Watch, Inc. v. U.S. Secret

Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013).  Where, as here, a plaintiff is proceeding *pro se,* the

Court has "an obligation to construe pro se filings liberally."  *Toolasprashad v. Bureau of

Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

"FOIA cases typically and appropriately are decided on motions for summary judgment."

*See, e.g.*, *Higgins v. U.S. Dep't of Justice*, 919 F. Supp. 2d 131, 139 (D.D.C. 2013) (quoting

*Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  To obtain

summary judgment, a defendant agency must establish that it has conducted an adequate search

for responsive records, that each responsive record that it has located either has been produced to

the plaintiff or is exempt from disclosure, and that it has not withheld any reasonably segregable

information.  *See Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980); *Elec.

Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 12 (D.C. Cir. 2014).  "[S]ummary judgment

may be granted on the basis of agency affidavits if they contain reasonable specificity of detail

rather than merely conclusory statements, and if they are not called into question by

contradictory evidence in the record or by evidence of agency bad faith." *Halperin v. CIA*, 629

F.2d 144, 148 (D.C. Cir. 1980).

## I.    FOIA REQUEST FOR ADMINISTRATIVE SUBPOENAS

Plaintiff first argues that defendant is not entitled to summary judgment because the four

administrative subpoenas he specifically sought in his April 28, 2014 FOIA request are "known

to exist" and, thus, the DEA "should have searched, identified, and provided those records" to

him.  (Opp'n at 1; *id*. Ex. A, ¶¶ 3-5 (Decl. of Stephen Aguiar, May 4, 2015) (attesting to fact that

plaintiff's criminal defense attorney showed him copies of the requested documents).)  The

DEA's position is that despite its failure to locate and produce these four subpoenas, it met its

legal obligation under the FOIA by searching all of the files where these subpoenas were

"reasonably likely to be found."  (Reply at 3.)  Defendant is correct that an agency's obligation

under the FOIA is to conduct an "adequate search" for responsive documents, not necessarily to

discover and produce all responsive documents, even those that are "known to exist."  Thus, the

sole question for the Court is whether the DEA conducted an adequate search for the four

administrative subpoenas identified by plaintiff's FOIA request.

An agency has conducted an adequate search under the FOIA if "it can demonstrate

beyond material doubt that its search was 'reasonably calculated to uncover all relevant

documents.'" *Valencia–Lucena v. U.S. Coast Guard,* 180 F.3d 321, 325 (D.C. Cir. 1999)

(quoting *Truitt v. Dep't of State,* 897 F.2d 540, 542 (D.C. Cir. 1990)).  In order to establish the

adequacy of its search on a motion for summary judgment, a defendant agency must submit a

"reasonably detailed affidavit, setting forth the search terms and the type of search performed,

and averring that all files likely to contain responsive materials (if such records exist) were

searched." *Oglesby v. U.S. Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990).  The agency's

affidavits need not "set forth with meticulous documentation the details of an epic search for the requested records," *Perry v. Block,* 684 F.2d 121, 127 (D.C. Cir. 1982), but if "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt,* 897 F.2d at 542. "'The adequacy of the search . . . is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case.'" *Steinberg v. U.S. Dep't of Justice,* 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. U.S. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

Generally, an "agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. C.I.A.*, 355 F.3d 675, 678 (D.C. Cir. 2004) ("the fact that responsive documents once existed does not mean that they remain in the CIA's custody today or that the CIA had a duty under FOIA to retain the records"); *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("But it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate."); *Weisberg,* 745 F.2d at 1485 (relevant question "is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*"); *Yeager v. Drug Enforcement Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982) ("A requester is entitled only to records that an agency has in fact chosen to create and retain.")

In this case, defendant has submitted sufficiently detailed, non-conclusory declarations to satisfy the Court that the DEA conducted an adequate search for the four administrative subpoenas sought by plaintiff.

Defendant's first declaration establishes that on August 2, 2013, in response to plaintiff's then-pending FOIA requests, it searched its file index, the Narcotics and Dangerous Drug Information System ("NADDIS"), using plaintiff's name, date of birth and social security number to locate any files maintained in its Investigative Reporting and Filing System ("IRFS") that pertained to plaintiff.[10]  (Myrick Decl. ¶ 57.)  That query resulted in the identification of four investigative case files, two of which were determined to be "reasonably likely to contain[] records responsive to plaintiff's request given the date parameters set by plaintiff."  (*Id.* ¶ 58.)  The DEA's Burlington, Vermont Residence Office, where these files were "maintained," was "tasked with" searching these files.  (*Id.*)  According to the declaration, plaintiff's then-pending FOIA requests "were construed as seeking . . . administrative subpoenas . . . pertaining to plaintiff" (*id.* ¶¶ 46, 58), and, as noted, several were produced by the DEA among the documents it released in September 2013.

Although the DEA never conducted a second search for administrative subpoenas after receiving plaintiff's April 28, 2014 FOIA request, its second declaration, which was filed in response to a request from the Court (*see* Order, July 20, 2015 [ECF No. 34]),[11] establishes that another search would merely have duplicated its first search:

---

[10] NADDIS "is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS." (Myrick Decl. ¶ 55.)  It "lists the investigative file number(s) [in the IRFS] that contain information regarding a particular individual or subject of an investigation." (*Id.* ¶ 56.)  Individuals are "indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth." (*Id.*)  The IRFS "contains all administrative, general and investigative files compiled by DEA for law enforcement purposes." (*Id.* ¶ 48.)

[11] The Court asked defendant to supplement the record because the FOIA requests that expressly mentioned administrative subpoenas were submitted *after* the DEA had conducted its NADDIS query on August 2, 2013, and it was not clear from defendant's first declaration that its NADDIS query was precisely the same search it would have used to locate specifically identified administrative subpoenas, leaving open the possibility that a different search could have been conducted that might have identified different files as responsive.

Although the April 28, 2014, request was more detailed than the Plaintiff's previous subpoena request, the detailed information provided by the Plaintiff concerning the subpoenas fell within the date ranges for information the Plaintiff had previously requested.  The previous searches would have uncovered all subpoena related information within the date ranges specified by the Plaintiff's April 28, 2014, request.

(Myrick Supp. Decl. ¶ 11.)

Taken together, defendant's two declarations are sufficient to establish the adequacy of the DEA's search for the four administrative subpoenas.  Although the failure to discover documents that are "known to exist" may, under certain circumstances, raise questions as to the adequacy of a search, the DEA's failure here to locate four administrative subpoenas, without more, is not enough to call into question the adequacy of its search.  Accordingly, the Court concludes that the DEA is entitled to summary judgment on the adequacy of its search for the four administrative subpoenas sought by plaintiff in his April 28, 2014 FOIA request.

## II.   FOIA REQUEST FOR CD WITH GPS TRACKING DATA AND ACCOMPANYING MAPPING SOFTWARE

Plaintiff also argues that defendant is not entitled to summary judgment because it has not yet produced a copy of the CD containing that data or a copy of the mapping software it used at plaintiff's trial to create images from that data.  In the alternative, plaintiff seeks printouts of each image that the DEA could create using its mapping software.  The DEA has now agreed to provide plaintiff with a copy of the CD (*see* Def.'s Notice of Compliance at 3),[12] so the sole remaining issue for the Court is whether the DEA must also provide plaintiff with a copy of the mapping software or, in the alternative, printouts of each image it could create using the mapping

---

[12] Defendant explains that it previously decided not to send plaintiff the CD because it believed that "[p]laintiff could not receive a CD containing his tracking data" in prison.  (*See* Def.'s Notice of Compliance at 3.)  However, plaintiff maintains that a CD may be sent to his unit manager at the prison via the United States mail.  (Pl.'s Resp. to Def.'s Notice of Compliance at 2.)  Accordingly, the DEA has agreed to send plaintiff a copy of the CD.

software.  In declining to produce either the software or printed images, defendant takes the position that neither constitute "agency records" covered by the FOIA.  The Court agrees.

Under the FOIA, a "district court . . . has jurisdiction to enjoin the agency from withholding *agency records* and to order the production of any *agency records* improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B) (emphasis added); *see Judicial Watch, Inc. v. Secret Service*, 726 F.3d at 214-15.  Although the FOIA does not define the term "agency record," *see id.* at 215, the Supreme Court has identified two requirements that must be met in order for requested materials to qualify as "agency records":  (1) the "agency must 'either create or obtain' the requested materials"; and (2) "the agency must be in control of the requested materials at the time the FOIA request is made."  *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 145 (1989) (quoting *Forsham v. Harris*, 45 U.S. 169, 183 (1980)).

With respect to the mapping software, defendant first contends that it is not an agency record as defined under the FOIA because it was not "created" by the DEA.  (*See* Def.'s Notice of Compliance at 4.)  The problem with this argument is that an agency record includes material that is either "created" or "obtained" by the agency.  *See Tax Analysts*, 492 U.S. at 145.  Even though the DEA did not "create" the mapping software, it clearly "obtained" it for use at plaintiff's trial.  (Def.'s Not. of Compliance at 3 (mapping software program is "software provided by the vendor that allowed the DEA agent to produce a 'screen shot' of what was visible on the computer monitor").)

Defendant's second argument is that the mapping software is not an agency record because it is not under the DEA's control.  Specifically, it argues that the DEA is not in "control" of the mapping software because "[t]his software program belongs to the vendor and the DEA has no authority to provide the software to other persons for their personal use, to modify or

change the software, or otherwise exercise control over the software"; "the software itself is not related to this or any particular Plaintiff; nor is the software necessary for a person to read the tracking data"; "[t]his vendor is one of many in the marketplace that sells or licenses the software to ends users"; and "[t]here are also numerous computer software programs available commercially that will automate the plotting" of the GPS tracking data onto a map.  (Def.'s Not. of Compliance at 4-5.)

Although there have been very few court decisions to address this issue, what case law there is supports defendant's view that the GPS mapping software utilized by the DEA is not an "agency record."  In *Gilmore v. Department of Energy*, 4 F. Supp. 2d 912, 918-19 (N.D. Cal. 1998), for example, the court held that video conferencing software created by a private entity and licensed to the Department of Energy was not an agency record covered by the FOIA because the agency "lacks sufficient control over [the software] to make it an agency record."  In reaching this conclusion the court followed the more general principle that an agency does not "control" a record "if it does not have unrestricted use of it."  *Id*.  The court in *Gilmore* emphasized that the software was "not designed to be . . . responsive to any particular database" and that it "does not illuminate anything about [the agency's] structure or decisionmaking process."  In contrast, in *Cleary, Gottlieb, Steen & Hamilton v. Department of Health & Human Servs.*, the court held that software programs created by an internal researcher at a federal agency were "agency records" because "[u]nlike generic word processing or prefabricated software, [the] programs are uniquely suited to [the agency's] underlying database" and "the software's design and ability to manipulate the data reflect the [agency's study]," thereby "preserving information and perpetuating knowledge."  844 F. Supp. 770, 782 (D.D.C. 1993).

As described by defendant, the mapping software used by the DEA to create images from the GPS tracking data at plaintiff's trial was a generic, prefabricated software program akin to the software used by the agency in *Gilmore* and, thus, not an "agency record." The only caveat to this conclusion is that defendant's description of the mapping software appears only in its legal briefs, not in either of its declarations or in any other part of the record. (*See, e.g.*, Def.'s Not. of Compliance at 4 n.5 ("upon information and belief the Defendant believes the software is licensed to the DEA only for official government purposes and may not be released to any other party for personal use," but defendant is "unsure whether the software is licensed, purchased, or used through another methodology").) It is defendant's burden to establish the undisputed facts necessary to support its motion and, on this issue, it has not yet done so. Accordingly, the Court must defer its final ruling on this issue until defendant is able to supplement the record with evidence to support its assertions.

As for plaintiff's alternative request that the DEA provide him with printouts of each image that could be created from the GPS data using the mapping software, it is well-established that the FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *See Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 152 (1980); *Brown v. Perez*, 2014 WL 7336788 (D. Colo. Dec. 23, 2014) (defendant agency not required to create and produce printouts of computer screenshots). Accordingly, the DEA is not required to create and produce the images plaintiff seek.

## III.   SEGREGABILITY

Plaintiff does not challenge the DEA's application of various FOIA exemptions to withhold records in full or in part, and the Court is satisfied by defendant's declarations, *Vaughn*

index and its own *in camera* review that there is no reasonably segregable, non-exempt

information in the withheld documents.

## CONCLUSION

Accordingly, and for the reasons stated above, the Court will grant defendant's motion

for summary judgment in all respects except one: the DEA's refusal to provide plaintiff a copy of

its mapping software on the ground that the software is not an "agency record."  On that issue,

the Court will defer its ruling to allow defendant to file an affidavit from someone with personal

knowledge that supports its assertions about the nature of the mapping software it used at

defendant's criminal trial.  Assuming defendant can do so, defendant will be entitled to summary

judgment on that issue as well.  A separate Order accompanies this Memorandum Opinion.


/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge


Date:   September 30, 2015

16